IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| BARRY JAMES and APRIL JAMES, | * | Chapter 7 |
|     Debtors | * | |
| | * | Case No.: 1-05-bk-05108 |
| | * | |

*********************************************************************

| | | |
|---|---|---|
| | * | |
| LAWRENCE G. FRANK, Trustee | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-05-ap-00183 |
| | * | |
| HARDING COUNTY, SOUTH | * | |
| DAKOTA, CASEY OLSON, for himself | * | |
| and on behalf of all the other similarly | * | |
| situated taxpayers of Harding, County | * | |
| South Dakota, RON FRITHIOF, KIM | * | |
| HOLLRAH, MELODY HARRELL and | * | |
| FRED DEBROVNER, | * | |
|     Defendants | * | |
| | * | |

*********************************************************************

| | | |
|---|---|---|
| | * | |
| LAWRENCE G. FRANK, Trustee | * | |
|     Plaintiff | * | |
| | * | |
| v. | * | Adv. No.: 1-05-ap-00190 |
| | * | |
| THE "T.C. GROUP" and | * | |
| RON FRITHIOF, | * | |
|     Defendants | * | |
| | * | |

## OPINION

### Procedural and Factual History

Lawrence G. Frank, the chapter 7 trustee, (the "Trustee") for the estate of Barry and April

James ("Debtors) filed two complaints alleging that Debtors possessed artisan's liens on two

1

distinct sets of dinosaur bones. In response to the complaints, certain defendants in each adversary proceeding filed motions requesting the Court to abstain. The adversary case filed at 1-05-ap-00183 involves the fossilized remains of a juvenile Tyrannosaurus rex (nicknamed "Tinker"), and the adversary filed at 1-05-ap-00190 involves the fossilized remains of a duckbill dinosaur (nicknamed "TC"). The complaints involve similar fact patterns, and the motions for abstention are based upon similar legal theories. Therefore, the Court will address the motions in both adversary proceedings in this Opinion.

Ron Frithiof ("Frithiof"), Fred Debrovner ("Debrovner"), Melody Harrell ("Harrell") and Kim Hollrah ("Hollrah") (collectively the "Tinker Movants") were named as defendants in the adversary case filed at 1-05-ap-00183. Frithiof and T.C. Group (collectively "T.C. Movants") were named as defendants in the adversary case filed at 1-05-ap-0190. In each case, the Trustee requests the Court to find that Debtors' estate includes "artisan's liens" on two groups of fossils that were in Debtors' possession on the date the bankruptcy petition was filed. The background of this unusual case is as follows.

Frithiof and Hollrah (also known as the "Tinker Group") entered into a lease with Gary Gilbert ("Gilbert") to hunt for fossils on Gilbert's land in South Dakota for the period September 18, 1998 through July 28, 2000. Excavation of the fossil site began in July 1998, and fossils were removed. At some point thereafter, Gilbert informed Frithiof that the location of the excavation site was adjacent to land owned by Harding County, South Dakota ("Harding County").[1] In November 2000, Frithiof and Harding County executed a five-year ground lease to

---

[1] In May of 2001, a title insurance company issued a commitment for an insurance policy for the tract on which the fossil site was located. The policy indicated that the site was owned by Harding County and was leased to Gilbert for hay, grazing and/or agricultural purposes.

2

commence on November 9, 2000. The lease provided that the Tinker Group would have legal title to all fossils found on Harding County's land.

On May 23, 2003, Harding County issued a notice rescinding the lease and, shortly thereafter, filed an action in district court in South Dakota against the Tinker Movants. In the district court action, Harding County alleged that the Tinker Group had improperly removed Tinker from county land. On June 2, 2006, the district court issued an opinion and order in which it found that the lease between Harding County and Frithiof was invalid, and granted summary judgment in favor of the county. *See Harding County, South Dakota v. Frithiof*, 2006 WL 1541017 (D.S.D.).[2] This Order was appealed to the Court of Appeals for the Eighth Circuit, and a decision reversing and remanding the case to the district court was issued on April 4, 2007. See *Harding County, South Dakota v. Frithiof*, 2007 WL 1012979 (8th Cir.).

On January 31, 2003, before Harding County commenced its efforts to rescind the lease, the Tinker Group, Debrovner and Cynthia Norrgran (collectively "Colorado Dinosaur Co., Inc.") and Debtors (also referred to as "Prehistoric Journeys") entered into a contract whereby Debtors would assist in cleaning and assembling the Tinker remains as well as help market the fossil. Eventually, certain disputes arose between parties such that Debtors became unable or unwilling to proceed with their work.[3] As a result of these disputes, at some point prior to the filing of their bankruptcy petition on August 4, 2005, Debtors took possession of Tinker and transported it to

---

[2] The facts recited above were culled from the Findings of Fact of the District Court in the *Harding County v. Frithiof* opinion, a copy of which was attached to Harding County's Answer to the Trustee's complaint.

[3] The nature of these disputes is not important to the resolution of the instant matter.

Pennsylvania.[4] According to the Trustee's complaint, Debtors did not receive payment for services rendered, which he has valued at approximately $75,000.00 . Tinker is now in the "constructive possession" of the Trustee.

On August 6, 2003, TC Movants entered into a similar contract with Debtors to restore and market the fossilized remains of TC. Disputes arose between the parties on performance under this contract as well, and Debtors also transported TC to Pennsylvania. The Trustee now has "constructive possession" of TC and asserts a claim of $125,000 for services rendered in the cleaning, identification and labeling of the remains. In both adversary complaints, the Trustee alleges that Debtors performed valuable services under the contracts, that the other parties to the contracts breached the agreements, and that artisan's liens, which are estate property, attach to the fossils.

On January 26, 2006, Tinker Movants in case no. 1-05-ap-00183 and TC Movants in case no. 1-05-ap-00190 requested the Court to abstain from hearing the Trustee's complaints, disputing the Trustee's allegation that these matters are within the "core" jurisdiction of the bankruptcy court. The motions argued that the cases are not "core" as defined by 28 U.S.C. §§ 157 and 1334 because the complaints pursue the recovery of damages for breach of contract under state law and, as such, should be heard in state court. Frithioff, the only defendant common to both proceedings, demanded a jury trial in both proceedings and Debrovner, Hollrah, and Harrell demanded a jury trial in the Tinker case. On February 16, 2006, Frithiof and

---

[4] According to a brief filed by the Trustee in support of the instant Complaint, some portion of the work required to prepare the bones for reconstruction was performed by the Debtors in Colorado, with the balance of the work having been performed in Pennsylvania.

4

Case 1:05-ap-00190-MDF    Doc 13    Filed 04/19/07    Entered 04/19/07 15:39:51    Desc
Main Document    Page 4 of 17

Debrovner filed proofs of claim in the bankruptcy case.[5] Shortly thereafter, Defendants Harrell and Hollrah[6] filed a joint motion requesting that the Court abstain. Harding County has not filed a motion to abstain, but did file an answer and counterclaim demanding return of the Tinker fossil remains.[7] The Trustee filed answers to both abstention motions and briefs have been filed. These matters are ready for decision.

## Discussion

The parties dispute whether the matters for consideration by the Court in each adversary proceeding involve issues that are core or non-core. Because resolution of this issue determines whether mandatory abstention is required and will influence the Court's consideration of whether permissive abstention is appropriate, I will address the core versus non-core question first.

---

[5]The proof of claim filed by Frithiof asserts claims based upon the Tinker and TC contracts (apparently on behalf of the Tinker Group), personal guarantees of Frithiof, personal loans of Frithiof, the return of other artifacts alleged to be owned by Frithiof and a claim for monies owing from the sale of other fossils to Debtor Barry James. The proof of claim filed by Debrovner also includes Cynthia Norrgran and Colorado Dinosaur Company, Inc. as creditors. In this claim Debrovner asserts claims based upon the Tinker and TC contracts, loans made, share of the profit in the sale of other artifacts and the return of personal property owned by claimants. Neither Norrgran or Colorado Dinosaur Company, Inc. is named as a defendant in either adversary proceeding.

[6]At this point in the proceeding, the basis for the Trustee naming Hollrah and Harrell as defendants in the Tinker case is unclear. Neither individual was a party to the contract for the preparation of the Tinker fossil that was executed by Debtors, Debrovner and Frithiof. It is presumed at this point that they are named as defendants because of any possible ownership interest they may have in the fossil.

[7]On August 14, 2006, Harding County answered the Trustee's complaint and asserted that venue in this district is not proper because the property on which the alleged artisan's lien may attach (the fossils) was discovered outside of Pennsylvania.

*I. Core jurisdiction*

Bankruptcy court jurisdiction includes four types of matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11. *In re Resorts International, Inc.,* 372 F.3d 154, 162 (3d Cir. 2004). Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are referred to as "core" proceedings. *In re Combustion Engineering, Inc.,* 391 F.3d 190, 225-26 (3rd Cir. 2004). A matter is core if it invokes a substantive right provided by the Bankruptcy Code or is a proceeding that could only arise in the context of a bankruptcy case. *Halper v. Halper*, 164 F.3d 830 (3d Cir. 1999). Proceedings that are merely "related to" a case under title 11 are referred to as "non-core" proceedings. *In re Resorts International, Inc.,* 372 F.3d at 162 (citing 1 *Collier on Bankruptcy*, ¶ 3.02[2], at 3-35 (15th ed. rev.2003)). Proceedings "related to" a title 11 case include causes of action owned by the debtor that become property of the bankruptcy estate under 11 U.S.C. § 541(a), as well as suits between third parties that conceivably may have an effect on the bankruptcy estate. *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n. 5, 115 S.Ct. 1493, 1501 (1995).

A "case under title 11" is case that is commenced by the filing of a petition under one of the chapters of the Bankruptcy Code. "The 'arising under' language of § 1334(b) is analogous to the 'arising under' language in 28 U.S.C. § 1331. In shorthand, it is commonly said that 'arising under' proceedings are . . . those cases in which the cause of action is created by title 11." *In re Middlesex Power Equipment & Marine, Inc.* 292 F.3d 61, 68 (1st Cir. 2002) (citing 1 *Collier on Bankruptcy,* ¶ 3.01[4][c][i], at 3-21)(e.g., an objection to exemptions). In contrast, proceedings that arise in a bankruptcy case "are those that are not based on any right expressly created by title

6

11, but nevertheless, would have no existence outside of the bankruptcy," typically, administrative matters. *United States Trustee v. Gryphon at Stone Mansion, Inc.,* 166 F.3d 552, 556 (3d Cir.1999). A matter is "related to" a chapter 11 case if it "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984). A matter is not determined to be non-core solely on the basis that its resolution may be affected by state law. 28 U.S.C. § 157(b)(3).

The rights that the Trustee seeks to assert in these proceedings are not bankruptcy rights. The Trustee is alleging that Debtors entered into two contracts that were breached by other parties to the contracts and, as a consequence, Debtors suffered damages. The issue of whether Debtors were parties to enforceable contracts and were entitled to assert possessory liens in the subject of these contracts is not within this Court's "arising under" or "arising in" jurisdiction.[8] In the absence of the bankruptcy proceeding, Debtors could assert identical claims in state court. Therefore, under the reasoning of *Resorts International*, in the absence of other considerations, these matters would be non-core. However, the filing of proofs of claim by Movants Frithiof and Debrovner has altered the jurisdictional analysis.

In *Katchen v. Landy*, 382 U.S. 323, 330, 86 S. Ct. 467, 473 (1966), the Supreme Court held that when a creditor files a proof of claim it submits itself to the summary jurisdiction of the bankruptcy court. The Supreme Court determined that a bankruptcy referee under the Bankruptcy

---

[8]The Trustee has cited to 28 U.S.C. § 157(b)(2)(B),(C), (H), and (O) in support of his argument that the issues raised in his complaints are core. However, the broad language used in the statute cannot be interpreted to eviscerate the holding of the United States Supreme Court in *Northern Pipeline Construction Co. v Marathon Pipe Line Co.*, 458 U.S. 50, 102 Sup. Ct. 2858 (1982). A cause of action owned by a debtor when the petition is filed, which becomes property of the estate under 11 U.S.C. § 541(a), is "related to" the bankruptcy case and, thus, is non-core.

7

Act of 1898 had jurisdiction to adjudicate a trustee's preference claim against a creditor after the creditor filed a proof of claim, which invoked the claims allowance process. *Id.* at 330, 86 S. Ct. at 467. In a case arising under the Bankruptcy Code of 1978, *Southeastern Sprinkler Company, Inc. v. Meyertech Corp. (In re Meyertech)*, 831 F.2d 410 (3d Cir. 1987), the Court of Appeals for the Third Circuit held that a creditor's prepetition breach of warranty claim under state law was a core matter. In *Meyertech*, the debtor filed its chapter 11 petition and, shortly thereafter, Southeastern Sprinkler Company, Inc. ("Southeastern") filed a proof of claim alleging breach of warranty. Meyertech objected to the claim and further alleged that Southeastern owed certain amounts on an open account. Presumably after the parties agreed to the lifting of the automatic stay, Southeastern filed a products liability complaint against Meyertech in district court in South Carolina primarily seeking recovery against Meyertech's insuror. This action was later removed to the bankruptcy court in Pennsylvania. When judgment was entered in favor of Meyertech, Southeastern appealed contending that the matter was not a core proceeding. The Court of Appeals determined that the matter was core because it was "an action which [had] as its foundation a question of the validity of a claim which accrued under state law against the bankrupt estate prior to bankruptcy." *Id.* at 416-17. In finding the matter to be core, the *Meyertech* court distinguished between a case in which a state law contract claim arises by the commencement of an action by the *debtor* prior to the filing of the petition and the commencement of an action by the filing of a proof of claim by the *creditor*. Although the opinion in *Meyertech* implies that a state law contract claim that is commenced by a debtor before the creditor files a proof of claim may be non-core, later cases have interpreted the holding more broadly. *See Shubert v. Lucent Technologies Inc. (In re Winstar Communications),* 348

8

B.R. 234, 247 ( Bankr. D. Del. 2005) (Trustee's breach of contract claim against defendant is core although commenced before defendant filed proof of claim against estate.); *PHICO Group, Inc. v. Persofsky (In re PHICO Group),* 304 B.R. 170, 173 (Bankr. M.D. Pa. 2003) (Defendant's voluntary act of filing proof of claim subjected him to the bankruptcy court's equitable power.); *Brown v. Death Row Records, Inc. (In re Brown),* 219 B.R. 373, 381 (Bankr. E.D. Pa. 1998) (Complaint that is in substance a counterclaim to proof of claim is core.); *In re Barto Technical Services, Inc.* v. *Taylor-Winfield Corporation* (*In re Barto Technical Services, Inc.*), 1996 WL 16664 (Bankr. W.D. Pa.) (Creditor's prepetition state law breach of warranty claim against estate was core matter where creditor had filed proof of claim.)[9]

The impact that the filing of a proof of claim has on the determination of jurisdiction was discussed by the Supreme Court in a case involving the right to a jury trial in a preference action. In 1990, the Supreme Court held that "by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claim.'" *Langenkamp v. Culp*, 498 U.S. 42, 44, 111 S.Ct. 330, 331 (1990) (citing *Granfinanciera v. Nordberg*, 492 U.S. 33, 58-59 and n. 14, 109 S.Ct. 2782, 2799 and n. 14 (1989)). Therefore, a creditor that files a claim against the bankruptcy estate has no right to a jury trial in a preference action filed against it by a trustee. Some courts have sought to limit the holding in *Langenkamp* to preference actions or to cases in which the debtor or trustee filed suit after a proof of claim was filed, but the weight of authority does not support this narrow reading. *See Benedor Corporation v. Conejo Enterprises, Inc. (In re Conejo Enterprises, Inc.)*, 71 F.3d 1460, 1465 (9th Cir. 1995) ("[T]he crucial factor triggering the

---

[9]A later decision of the Court of Appeals clarified that the order in which claims and counterclaims arise is not determinative of whether the matter is core or non-core. *In Travellers International AG v. Robinson,* 982 F.2d 96, 100 n. 4 (3d Cir. 1992).

allowance process in *Langenkamp* was not that the trustee sought to avoid preferences, but that the creditors filed proofs of claim."); *S.G. Phillips Constructors, Inc. v. City of Burlington, Vt. (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 705 (2d. Cir. 1995) (The filing of a proof of claim is the "determinative factor" in resolving whether a matter is a core or non-core proceeding.); *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850, 853 (6th Cir. 1993) ("A suit by a third party creditor . . . against the debtor . . . is a core proceeding under § 157(b)(2)(B)."); *Travellers International AG v. Robinson,* 982 F.2d 96, 98-99 (3d Cir. 1992) (Once a creditor files a claim, he loses his right to a jury trial, and it is irrelevant whether a claim is filed before or after a preference action is brought.)

Frithiof and Debrovner both filed proofs of claim in Debtors' bankruptcy case for "goods sold," "money loaned," and "share of profits" arising out of the Tinker and TC contracts. The proofs of claim assert counterclaims to the relief sought by the Trustee in the adversary proceedings against Frithiof, Debrovner, Hollrah, and TC Group.[10] Therefore, by filing their proofs of claim, Frithiof and Debrovner triggered the process of allowance and disallowance of claims and subjected themselves to the court's core jurisdiction.

II. Abstention

    A. Mandatory Abstention

A court "shall abstain" from exercising jurisdiction in a case "related to a case under title 11 but not arising under title 11 or arising in a case under title 11 . . . if an action is commenced

---

[10]Harrell was not a party to the contracts that are the subjects of the proofs of claim. Therefore, any claim the Trustee asserts against her is not core. However, the claims against her are proceedings related to the bankruptcy case, which generally may be heard by a bankruptcy court. A decision on whether Harrell is entitled to a jury trial before the district court on the complaint is reserved by the Court.

10

and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). Thus, a bankruptcy court is not barred from hearing a non-core matter if there is no pending case in a state court. *See In re Baitinger Electric Co., Inc.,* 94 B.R. 33 (S.D.N.Y. 1988) (with no action pending in state court, movant "failed to establish" requirements for abstention). The TC contract is not at issue in any state court. The matter before the South Dakota District Court involves Tinker, but the validity of the contract entered into by Debtors, the Tinker Group and Colorado Dinosaur Co. Inc. and the question of whether an artisan's lien attached to the fossil remains is not at issue. Therefore, mandatory abstention is not required.

### B. Permissive Abstention

A court *may* abstain from hearing a particular proceeding "arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). So broad is a court's discretion regarding permissive abstention that, except in very limited circumstances, "any decision to abstain or not to abstain . . . is not reviewable by appeal or otherwise. . . ." 28 U.S.C. § 1334(d).

Courts have identified twelve factors that should be considered when deciding whether abstention is appropriate: (1) the effect on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence of non-debtor parties. *Great American Insurance Co. v. In re Mobile Tool International (In re Mobile Tool International),* 320 B.R. 552, 556-557 (Bankr. D. Del. 2005). *Accord In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993); *Republic Reader's Service Inc. v. Magazine Service Bureau, Inc. (In re Republic Reader's Service, Inc.)*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987). These twelve factors are not applied to the facts of a case like a mathematical formula. *TransWorld Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715( Bankr. D. Del. 1996). When these factors are applied to the complaints filed by the Trustee in the within proceedings, both the majority and those factors afforded greater weight, do not favor abstention.

*Factor (1) – the effect on the efficient administration of the estate*: The efficient administration of the estate will be furthered if I do not abstain. Although not filed as counterclaims to the proof of claims filed by Frithiof and Debrovner, the Trustee's causes of action arise from the same set of facts as the claims, which already are before the Court.

*Factor (2) – the extent to which state law issues predominate over bankruptcy issues*: State law issues do predominate over bankruptcy issues even if this matter is heard within the context of the claims allowance process. Therefore, this factor weighs in favor of abstention.

*Factor (3) – the difficulty or unsettled nature of applicable state law:* The underlying issues raised in the Trustee's complaints – matters of contract, breach of contract and possessory liens – do not involve novel questions of law. In addition, as discussed below, the factors necessary for an artisan's lien to arise are similar whether Pennsylvania, Colorado or South Dakota law is applied.

*Factor (4) – the presence of a related proceeding commenced in state court or other non-bankruptcy court:* Since briefs were filed in this matter the Court of Appeals for the Eighth Circuit has reversed the decision of the South Dakota District Court granting Harding County's motion for summary judgment and has remanded the case for further proceedings. The action, which is now again before the district court, involves the Tinker Movants and Harding County, and the eventual resolution of the litigation will have an impact on the Tinker adversary proceedings.[11] Although this litigation probably will affect the Tinker adversary, the issues in the two cases are different. The Trustee is not a party to the suit in the South Dakota court, and his claim against the Tinker Movants is based upon the contract between the Tinker Movants and Debtors and not the lease agreement between the Tinker Group and Harding County. The resolution of the Tinker adversary, however, is inextricably intertwined with the resolution of the proofs of claim that have been filed by Frithiof and Debrovner. While the Court may stay the Tinker adversary, abstention is not appropriate. As to the TC adversary, the bankruptcy court is the appropriate forum for resolving the Trustee's complaint against the TC Group and the proofs of claim as they pertain to the TC contract. There is no pending action in any other forum involving this matter.

*Factors (5) – the jurisdictional basis, if any, other than section 1334*: Except as to the claim against Harrell, I have jurisdiction to enter final orders in these matters because I have determined them to be core.

---

[11] While abstention may not be justified in the Tinker adversary, as discussed below, the Court will stay the proceedings in the interests of judicial economy pending the resolution of the South Dakota litigation.

*Factor (6) – the degree of relatedness or remoteness of the proceeding to the main bankruptcy case*: The adversary proceedings are intimately related to the main bankruptcy case because judgments in favor of the Trustee will provide the only assets for liquidation.[12]

*Factor (7) – the substance rather than the form of an asserted "core" proceeding*: Even if this action were non-core, it is significantly related to the bankruptcy case, and the movants have submitted to the Court's jurisdiction by filing proofs of claim. While it is technically feasible to require the Trustee to file an action in state court while retaining jurisdiction to enforce the judgment in bankruptcy court, the delay associated with the commencement and conclusion of a state court case makes abstention impractical.

*Factor (8) – the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court*: Severing the Trustee's state law claim against the Tinker and TC defendants would be inefficient because the same issues will arise in the Trustee's objections to the proofs of claim, which must be decided by this Court.

*Factor (9) – the burden on the bankruptcy court's docket*: The Court's docket will not be unduly burdened by the need to resolve this matter.

*Factor (10) – the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties*: The bankruptcy case was filed in the Middle District of Pennsylvania and the Trustee commenced the adversaries in this district. There is no

---

[12]The schedules indicate that the estate has no assets aside from the instant causes of action available for liquidation.

evidence to support an inference that the proceedings were commenced here in order to obtain a more favorable forum.

*Factor (11) – the existence of a right to a jury trial*: By filing proofs of claim, Frithiof and Debrovner have submitted to the equitable jurisdiction of this Court and have, thereby, been divested of their right to a jury.[13] Further, these proofs of claim assert claims on behalf of the Tinker Group, which includes Hollrah and also may include Harrell.

*Factor (12) – the presence of non-debtor parties*: Several non-debtor parties are involved in this case who are located in states remote from this Court, including Colorado, Texas, Iowa and South Dakota. This factor weighs in favor of abstention.

In summary, although several factors favor abstention, namely the presence of non-debtor parties in the proceeding and the presence of issues of state law, most of the factors militate against abstention. Therefore, I decline to abstain from hearing and deciding both adversary proceedings.

*III. The Trustee's arguments for finding the existence of artisan's liens.*

The ultimate bone of contention in both of the above-captioned adversary cases is whether artisan's liens arose in favor of Debtors because of the work performed on the two groups of artifacts. Generally speaking, an artisan's lien is "a possessory lien given to a person who has made improvements and added value to another person's personal property as security

---

[13]By filing a proof of claim a party can lose its right to a jury under one of two theories. Under the "waiver theory" a party waives its right to a jury by voluntarily submitting to the jurisdiction of the bankruptcy court by filing a proof of claim. Under the "conversion theory" the filing of a proof of claim invokes the process of allowance and disallowance of claims thus converting the claim from a legal dispute about money into an equitable dispute about the party's share of the estate. *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250-53 (3d Cir. 1993).

Case 1:05-ap-00190-MDF    Doc 13    Filed 04/19/07    Entered 04/19/07 15:39:51    Desc
Main Document      Page 15 of 17

for payment for services performed." *Black's Law Dictionary, Sixth Edition.* As indicated above, the particular procedural rules for creating and enforcing an artisan's lien are matters of state law. The parties do not dispute that the laws of one or more states, including South Dakota, Colorado and Pennsylvania may apply. A determination of the appropriate choice of law is unnecessary at this procedural juncture. Nevertheless, the law of these three states are uniform on at least one threshold point – for an artisan's lien to be created, the party asserting the lien must have obtained possession of the property with the consent of the property's owners. *See Associates Financial Services Co., Inc. v. O'Dell*, 262 Pa. Super. 584, 396 A.2d 1324 (1979) ("the consensual nature of the transaction which gives rise to possessory lien is an indispensable element of the common law possessory lien . . . ."); Colo. Revised Stats. Ann. § 38-20-106 ("person who ... bestows labor upon any article of personal property, *at the request of the owner of such personal property* . . . shall have a lien upon such property for the amount due for such labor . . . ."); South Dakota Codified Laws 44-11-1 ("If a person, *at the request or consent of the owner or person lawfully in possession*, furnishes any services, skill, [or] labor . . . for the . . . preservation of any personal property, such person shall have a lien thereon . . . .")

Whether the Tinker Group is the rightful owner of the Tinker fossil still remains at issue in adversary no. 1-05-ap-00183. Until this matter is resolved by the South Dakota court, I am unable to determine whether it is possible for a lien to have been created. Therefore, while the motion to abstain in the adversary case filed at 1-05-ap-00183 is denied, the proceeding will be stayed until a final decision is rendered in the case filed by Harding County against the Tinker Movants. As to adversary no. 1-05-ap-00190, the motion to abstain is denied, and the

16

defendants will be directed to file an answer to the complaint within thirty days of the date of the order denying the motion to abstain.

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: April 19, 2007

*This document is electronically signed and filed on the same date.*

17

Case 1:05-ap-00190-MDF    Doc 13    Filed 04/19/07    Entered 04/19/07 15:39:51    Desc
Main Document    Page 17 of 17